# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD DURBEN and REBECCA DURBEN, <br><br> Plaintiffs, <br><br> v. <br><br> STATE FARM GENERAL INSURANCE COMPANY, a corporation, DOES 1 to 10, <br><br> Defendant. | No. 2:16-cv-00754-MCE-EFB <br><br> **MEMORANDUM AND ORDER** |

By way of this action, Plaintiffs Donald and Rebecca Durben ("Plaintiffs") seek declaratory relief and damages arising from Defendant State Farm General Insurance Company's ("Defendant" or "State Farm") failure to pay Plaintiffs' benefits due under its Deluxe Homeowners Policy (the "Policy") pursuant to the property coverage provided by Section I of the Policy. Plaintiffs assert three causes of action: (1) breach of the implied covenant of good faith and fair dealing, (2) breach of contract, and (3) declaratory relief and reformation, all based on the argument that State Farm failed to pay reconstruction costs and damages suffered by Plaintiffs, thereby breaching the Policy. Plaintiffs additionally seek punitive damages on the theory that State Farm's actions were willful and malicious. State Farm has moved for summary judgment on all claims.

For the reasons discussed below, State Farm's Motion for Summary Judgment

(ECF No. 17) is GRANTED with respect to the First Cause of Action and Plaintiffs' request for punitive damages, as well as to the extent Plaintiffs seek reformation of the contract in their Third Cause of Action. The Motion is otherwise DENIED.[1]

**BACKGROUND**[2]

Plaintiffs owned a home located in Bella Vista, California (the "Home") and purchased a homeowner's insurance policy (the "Policy") from State Farm. Section I of the Policy provided for property coverage. Coverage A applied to accidental direct physical loss to the building; Coverage B provided coverage to personal property; and Coverage C covered additional living expenses. Under Coverage A, the policy would pay "the reasonable and necessary cost to repair or replace with similar construction," up to the policy limit.

On February 1, 2014, a fire damaged the Home. The damage included but was not limited to destruction of part of the roof; other sections of the roof were rendered unstable. Plaintiffs tendered a claim under the Policy.

At State Farm's request, Plaintiffs hired ServiceMaster by Cronic Disaster Services ("Cronic") to estimate the cost of restoring the Home to its pre-fire condition. On February 26, 2014, all parties and their respective architects participated in a walk-through to determine the extent of damage. A significant disagreement arose regarding the proper reconstruction method to be used. According to Plaintiffs' architect, the entire second floor of the Home would need to be imploded. State Farm and its general

///
///

---

[1] The Court has reviewed State Farm's Objections to Plaintiffs' Evidence, filed with its Reply brief. ECF No. 21-1. Because the Court did not rely on the objected to evidence, the objections are deemed moot.

[2] The following facts are derived from the parties' statements of disputed and undisputed facts, Plaintiffs' Complaint, and State Farm's Motion for Summary Judgment. Where disputed, the facts are construed in Plaintiffs' favor.

contractor believed implosion was unnecessary, believing only part of the second floor needed to be demolished.

In April 2014, Plaintiffs received a letter from Jay Krupa of K2 Engineering and Structural Design ("K2"), recommending that the roof be imploded. In May 2014, Mr. Nidever ("Nidever") of Clean Rite, State Farm's retained general contractor, completed a preliminary estimate in the amount of $277,000. The estimate left several items open, including demolition costs which were still in dispute. During this time, State Farm also retained engineer Kevin Butler ("Butler") from Butler Engineering to review the demolition plan submitted by K2. Butler agreed with Nidever that implosion was unnecessary, at which point Nidever revised the estimate to include demolition costs in the amount of $47,000 for the partial demolition recommended by Butler.

Plaintiffs subsequently provided State Farm with Cronic's estimate in the amount of $690,000, which amount included demolition costs utilizing the implosion method recommended by K2. State Farm rejected Cronic's estimate in light of the continued disagreement about the appropriate demolition plan. In the spring of 2015, Nidever's estimate was revised to include costs not accounted for in the preliminary estimate, bringing the total sum paid to Plaintiffs to $430,000.

Instead of repairing the Home, Plaintiffs sold it at a loss and subsequently filed this lawsuit against State Farm for breach of the implied covenant of good faith and fair dealing, breach of contract, and declaratory relief and reformation. Plaintiffs contend that State Farm did not perform to the terms of Coverage A by offering far less than what was reasonable and necessary to rebuild their home. Plaintiffs also allege that they were told Clean Rite was unavailable to do the repairs and as such, the acceptance of the lower estimate from Clean Rite was in bad faith. Plaintiffs further contend that State Farm did not perform to the terms of Coverage B by overruling its initial estimator's depreciation rate, and instead applying a far greater deprecation rate. Plaintiffs seek reformation of the Policy to reflect the parties' respective rights and duties under California law.

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. Celotex, 477 U.S. at 325.

Rule 56 also allows a court to grant summary judgment on part of a claim or defense, known as partial summary judgment. See Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."); see also Allstate Ins. Co. v. Madan, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995). The standard that applies to a motion for partial summary judgment is the same as that which applies to a motion for summary judgment. See Fed. R. Civ. P. 56(a); State of Cal. ex rel. Cal. Dep't of Toxic Substances Control v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998) (applying summary judgment standard to motion for summary adjudication).

In a summary judgment motion, the moving party always bears the initial responsibility of informing the court of the basis for the motion and identifying the portions in the record "which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).

In attempting to establish the existence or non-existence of a genuine factual dispute, the party must support its assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits[,] or declarations . . . or other materials; or showing that the materials cited do

4

not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987). The opposing party must also demonstrate that the dispute about a material fact "is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In other words, the judge needs to answer the preliminary question before the evidence is left to the jury of "not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251 (quoting Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)) (emphasis in original). As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule [56(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. Therefore, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Id. 87.

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

///

///

///

**ANALYSIS**

**A.  Breach of Duty of Good Faith and Fair Dealing Claim**

The law implies in every contract, including insurance policies, a covenant of good faith and fair dealing.  Wilson v. 21st Century Ins. Co., 42 Cal. 4th 713, 720 (2007).  A breach of the implied covenant of good faith and fair dealing involves something more than a breach of the contract or mistaken judgment.  Chateau Chamberay Homeowners Assn. v. Associated Internat. Ins. Co., 90 Cal. App. 4th 335, 345 (2001).  Rather, there must be proof the insurer failed or refused to discharge its contractual duties not because of "an honest mistake, bad judgment, or negligence but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement."  Id. at 346.  Under California law, in order to prevail on a claim for breach of the implied covenant of good faith and fair dealing, Plaintiffs must establish that State Farm's handling of the claim was unreasonable.  Love v. Fire Ins. Exch., 221 Cal. App. 3d 1136, 1151 (1990).

Although the issue of the "reasonableness of an insurer's claims-handling conduct is ordinarily a question of fact," Hangarter v, Provident Life & Accident Ins. Co., 373 F.3d 998, 1010 (9th Cir. 2004), State Farm argues it is entitled to summary judgment in this case under the genuine dispute doctrine.  This doctrine allows a court to "conclude as a matter of law than an insurer's denial of a claim is not unreasonable, so long as there existed a genuine issue as to the insurer's liability."  Guebara v. Allstate Ins. Co., 237 F.3d 987, 992 (9th Cir. 2001).  Initially, the doctrine was only invoked in cases involving disputes over policy interpretation, but has more recently been applied to factual disputes as well.  Wilson, 42 Cal. 4th at 723.

Because the key to a bad faith claim is whether denial or delay of a claim was unreasonable, "[t]he genuine issue rule in the context of bad faith claims allows a [trial] court to grant summary judgment when it is undisputed or indisputable that the basis for

the insurer's denial of benefits was reasonable—for example, where even under the plaintiff's version of the facts there is a genuine issue as to the insurer's liability under California law. [Citation.] . . . On the other hand, an insurer is not entitled to judgment as a matter of law where, viewing the facts in the light most favorable to the plaintiff, a jury could conclude that the insurer acted unreasonably." Id. at 724 (internal quotation marks and citation omitted). "The 'genuine dispute' doctrine may be applied where the insurer denies a claim based on the opinions of experts." Guebara, 237 F.3d at 993 (quoting Fraley v. Allstate Ins. Co., 81 Cal. App. 4th 1282, 1292 (2000)). Fraley, which affirmed summary judgment in the insurer's favor, involved a dispute over the cost to repair the insured's home that was extensively damaged by fire. Contractors for both parties could not agree on the cost of repairs. Fraley held: "Where the parties rely on expert opinions, even a substantial disparity in estimates for the scope and cost of repairs does not, by itself, suggest the insurer acted in bad faith." Fraley, 81 Cal. App. 4th at 1293, see also Chateau Chamberay Homeowners, 90 Cal. App. 4th at 346 (stating "there can be no bad faith liability imposed on the insurer for advancing its side of that dispute.").

   Plaintiffs' argument hinges on the theory that State Farm underpaid Plaintiffs' construction costs under Coverage A by accepting the lower estimate. Plaintiffs question the accuracy of the lower estimate in light of the disparity between the estimates provided by the parties' different contractors. Plaintiffs argue that this raises an issue of fact as to whether State Farm's reliance on the lower quote was reasonable. But the disparity between the estimates alone—especially where that disparity is the result of differing opinions on the method of repair—is not enough to support a finding that State Farm's reliance on the lower was unreasonable. Plaintiffs' Opposition therefore fails to persuade this Court that a jury could conclude that State Farm's reliance on its expert was unreasonable or made in bad faith.

   It is undisputed that the two parties disagreed on whether the entire second floor needed to be demolished or whether it could be repaired through partial demolition. State Farm asserts, and the Court agrees, that this difference in repair methods is the

reason behind the disparity in repair costs. The evidence reflects that both Brenda Ericksen ("Ericksen"), State Farm's claim specialist, and Nidever, the general contractor of Clean Rite, voiced their concerns with the implosion during the first walk-through. They nonetheless conducted a thorough and reasonable investigation into the implosion process (described below) before State Farm concluded it was unnecessary.

State Farm attempted to be a part of a second inspection involving K2 but was denied. Upon receiving the formal recommendations from K2, State Farm approved the retention of an independent engineer from Butler Engineering to review K2's recommendations. Butler agreed with Ericksen and Nidever that implosion was unnecessary. According to Butler, the demolition could be conducted through more cost-effective means. State Farm based the repair estimate provided to Plaintiffs in May 2014 on Butler's independent evaluation and opinion. State Farm then conducted a third inspection of the Home in which they reiterated their disagreement about the appropriate demolition plan.[3]

The Court therefore finds that State Farm's review of the recommendations by Nidever, coupled with the retention of an independent expert to evaluate the proposed demolition method by K2, led State Farm to a reasonable conclusion concerning repair costs. Because it is indisputable that State Farm's decision was reasonably based on the opinions of multiple experts, the Court finds that the genuine dispute doctrine allows for summary judgment under the circumstances present here. Even if their ultimate decision was a breach of the Policy, Plaintiffs have failed to raise a triable issue of fact concerning State Farm's alleged bad faith.

Based on the above, State Farm's Motion for Summary Judgment with respect to the First Cause of Action is GRANTED.

///

---

[3] State Farm would also have the Court consider the fact that the Home was later repaired using the method suggested by its experts as evidence of reasonableness. However, as provided in Century Surety Co. v. Polisso, 139 Cal. App. 4th 922, 949 (2006), the reasonableness of an insurer's actions and decision to deny benefits is evaluated as of the time the decision was made rather than with the benefit of hindsight.

## B. Breach of Contract Claim

The standard elements of a claim for breach of contract are "(1) the contract, (2) plaintiff's performance or excuse for non-performance, (3) defendant's breach, and (4) damage to the plaintiff therefrom." Abdelhamid v. Fire Ins. Exchange, 182 Cal. App. 4th 990, 999 (2010). Plaintiffs argue that the claim payment it received under the Policy was unreasonably low and improperly calculated, evidencing State Farm's breach. State Farm, on the other hand, maintains it did not breach its contract because it paid the amounts it derived from Clean Rite's repair estimate. Thus, the issue confronted in Plaintiffs' breach of contract claim is whether the amounts paid by State Farm met the "reasonable and necessary costs" promised within the Policy. To that end, genuine issues of material fact, as described below, preclude summary judgment.

As described above, the parties dispute the amount necessary to repair the Home to its pre-fire condition. This dispute, based on differing opinions of various experts, reveals that there are numerous disputed issues of material fact. For example, Plaintiffs contend that the payment received is insufficient because the quote they initially obtained from one of State Farm's preferred retailers was for an amount significantly higher. When creating the initial estimate for repairs, both Ericksen and Nidever were aware of the recommendation that the roof be imploded, but according to Nidever, the implosion of the roof was unnecessary. Nidever's second estimate, which included demolition costs, was calculated using an alternative method for the roof repair based on a recommendation by Butler Engineering.

Additionally, Plaintiffs contend State Farm's reliance on Nidever's methodology was improper. According to Plaintiffs, Clean Rite was not available to do the repairs themselves so their estimate should not have been considered. State Farm relies on the fact that the Home, once sold, was in fact repaired using the methodology suggested by Nidever as evidence that they complied with the terms of the Policy to pay reasonable and necessary expenses. But, as provided above, hindsight is irrelevant to the Court's analysis. Century Surety, 139 Cal. App. 4th at 949. Accordingly, there are genuine

issues of material fact as to whether the amount paid under Coverage A was the correct measure of Plaintiffs' reasonable and necessary costs of repair or loss.

Along these same lines, Plaintiffs argue that State Farm did not perform to the terms of Coverage C when it "intentionally delayed the full settlement of their claims" thereby forcing Plaintiffs to exhaust their Additional Living Expense ("ALE") benefits and requiring Plaintiffs to accept the lower repair offer. State Farm maintains they adhered to the Policy by extending ALE benefits from the date of the fire until August 30, 2015, which was 12 months from the date State Farm issued the money it determined sufficient for repairs. Because the amount paid and the proper method of demolition remained at issue, it is unclear from the current record at what point Plaintiffs' Home should have been operational, and thus, the date through which Plaintiffs should have received ALE benefits.

For the reasons stated above, the Court DENIES State Farm's Motion for Summary Judgment of Plaintiffs' breach of contract cause of action.

**C.  Declaratory Relief and Reformation**

State Farm additionally moves for summary judgment of Plaintiffs' declaratory relief and reformation claim. Plaintiffs request that the Court issue a declaration interpreting each party's respective rights and duties under the Policy, and reform the contract to reflect the intentions of the parties. Plaintiffs argue that actual controversies exist between the parties concerning the correct depreciation amounts to be taken on Plaintiffs' real and personal property losses; correct measurement of the buildings destroyed; and the correct amount of loss of rental value to which Plaintiffs are entitled under the Policy. It is Plaintiffs' contention that State Farm failed to perform its duties under Coverage B when it overruled its initial estimator's deprecation rate and instead applied a greater depreciation rate. In its Motion, State Farm concedes Plaintiffs' declaratory relief claim is derivative of its breach claim, and therefore, summary judgment of the declaratory relief claim is also DENIED. However, Defendants assert Plaintiffs have stated no basis for reformation of the contract, and Plaintiffs have raised

no triable issue of material fact concerning their right to reformation. For that reason, to the extent Plaintiffs seek such relief, summary judgment is GRANTED.

### D. Punitive Damages

Lastly, Plaintiffs' prayer for relief requests "punitive or exemplary damages according to proof" that State Farm deliberately attempted to compel Plaintiffs to accept a lower and unrealistic estimate, intentionally causing delays in the reconstruction. Examination of the body of the Complaint reveals that punitive damages are sought by way of the First Cause of Action, wherein Plaintiffs allege that State Farm committed acts that "were willful and malicious with a conscious disregard of Plaintiffs' rights" entitling them to punitive damages. Plaintiffs do not allege that punitive damages apply to their breach of contract claim. Because the Motion for Summary Judgment has been granted on the First Cause of Action, Plaintiffs' claim for punitive damages must also fail. Accordingly, State Farm's Motion is GRANTED in this regard.

## CONCLUSION

For the reasons set forth above, State Farm's Motion for Summary Judgment (ECF No. 17) is GRANTED in part and DENIED in part. The Motion is GRANTED as to the First Cause of Action for breach of the implied covenant of good faith and fair dealing. The Motion is also GRANTED with respect to the availability of punitive damages under the First Cause of Action. With respect to punitive damages, the Motion is granted without prejudice to Plaintiffs renewing a request for such damages should evidence surface that supports such a request. To the extent Plaintiffs seek reformation of the contract, State Farm's Motion is also GRANTED, but it is DENIED with respect to Plaintiffs' claim for declaratory relief. Finally, the Motion is DENIED with respect to Plaintiffs' Second Cause of Action for breach of contract.

IT IS SO ORDERED.

Dated: September 6, 2018

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE